UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

CHADWICK-BAROSS, INC.,      )
                             )
            Plaintiff,       )
                             )
v.                           )   Docket No. 2:15-cv-136-NT
                             )
ECOVERSE INDUSTRIES, LTD.,   )
                             )
            Defendant.       )

**ORDER ON DEFENDANT'S MOTION TO TRANSFER VENUE**

Before the Court is the Defendant's motion to transfer venue pursuant to 28 U.S.C. § 1404(a) (ECF No. 15). For the reasons stated below, the motion is **GRANTED**.

**BACKGROUND**

Plaintiff Chadwick-BaRoss, Inc. ("**Chadwick-BaRoss**" or the "**Plaintiff**") is a Maine corporation engaged in the sale of industrial, construction, commercial, forestry and business equipment and machinery to retail customers. First Am. Compl. ¶¶ 1, 9 (ECF No. 1-1). Chadwick-BaRoss entered into a distributor agreement with Doppstadt US LLC ("**Doppstadt**"), committing to purchase certain Doppstadt products for resale or lease to its customers. First Am. Compl. ¶¶ 10-11; Doppstadt US Chadwick-BaRoss, Inc. Distributor Agreement ("**Distributor Agreement**") (ECF No. 1-1 Ex. A). Doppstadt later merged with Ecoverse Industries, Ltd. ("**Ecoverse**" or the "**Defendant**"), an Ohio limited liability company. First Am.

Compl. ¶¶ 3-4. As a result of the merger, Ecoverse succeeded to all of Doppstadt's rights and liabilities. First Am. Compl. ¶ 5.

Chadwick-BaRoss initially sued Ecoverse in Cumberland County Superior Court. First Am. Compl.[1] Ecoverse removed to this Court and now moves to transfer venue to the United States District Court for the Northern District of Ohio, Eastern Division.[2] Notice of Removal (ECF No. 1); Def.'s Mot. to Transfer Venue (ECF No. 15).

In order to decide the venue question, I must consider the applicability of a forum selection clause in the Distributor Agreement and the effect of Maine's Farm Machinery, Forestry Equipment, Construction Equipment and Industrial Equipment Dealerships Act, 10 M.R.S. §§ 1285-1298 (the "**Maine Dealerships Act**") on that clause.

## LEGAL STANDARD

Venue "refers to the geographic specification of the proper court or courts for the litigation of a civil action that is within the subject-matter jurisdiction of the district courts in general . . . ." 28 U.S.C. § 1390. Venue has been described as "largely a matter of litigational convenience . . . ." *Wachovia Bank v. Schmidt*, 546 U.S. 303,

---

[1] The First Amended Complaint alleges five counts: (1) Violation of Maine's Farm Machinery, Forestry Equipment, Construction Equipment and Industrial Equipment Dealerships Act, 10 M.R.S. §§ 1285-1298; (2) Violation of Maine's Franchise Laws for Power Equipment, Machinery and Appliances, 10 M.R.S. §§ 1361-1370; (3) Breach of Contract; (4) Unjust Enrichment; and (5) Promissory Estoppel.

[2] Chadwick-BaRoss signed additional agreements along with the Distributor Agreement. *See* First Am. Compl. ¶ 10 (ECF No. 1-1). One such agreement specifies that venue will be "in the courts located in Cleveland, Ohio." Doppstadt General Terms and Condition of Sale ¶ 19 (ECF No. 15-3). The United States District Court for the Northern District of Ohio, Eastern Division is located in Cleveland, Ohio.

316 (2006). The provision governing venue generally is 28 U.S.C. § 1391, which instructs:

> A civil action may be brought in—(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). If a plaintiff has not chosen a venue that complies with this directive, then a defendant may file a motion to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(3), or a motion to dismiss or transfer pursuant to 28 U.S.C. § 1406(a).

The Supreme Court has stated that venue is not "wrong" under § 1406(a) or "improper" under Rule 12(b)(3) where a plaintiff complies with § 1391, but files suit somewhere other than where the parties agreed to litigate through a forum selection clause. *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 134 S. Ct. 568, 579 (2013). Instead, the proper vehicle for a defendant seeking to enforce a forum selection clause—a contractual agreement as to venue—is a motion to transfer venue under 28 U.S.C. § 1404(a).[3] *Id.* The Supreme Court has instructed that "'a valid forum-selection clause [should be] given controlling weight in all but the most

---

[3] The Supreme Court declined to resolve whether a defendant may also enforce a forum selection clause through a Rule 12(b)(6) motion. *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 134 S. Ct. 568, 580 (2013). Post-*Atlantic Marine*, the First Circuit has continued to allow litigants to use Rule 12(b)(6) as a vehicle to enforce forum selection clauses. *See Carter's of New Bedford, Inc. v. Nike, Inc.*, 790 F.3d 289, 291-92 (1st Cir. 2015); *Claudio-De Leon v. Sistema Universitario Ana G. Mendez*, 775 F.3d 41, 46 n.3 (1st Cir. 2014).

exceptional cases.'" *Id.* at 581 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988)).

In a motion to transfer under § 1404(a) *not* involving a forum selection clause, courts "must evaluate both the convenience of the parties and various public-interest considerations." *Id.* at 581. Courts weigh these factors and determine whether, on the whole, "transfer would serve 'the convenience of the parties and witnesses' and otherwise promote 'the interest of justice.'" *Id.* (quoting 28 U.S.C. § 1404(a)). Where, however, there *is* a valid forum selection clause, courts must alter their transfer analysis in three ways. First, the plaintiff's choice of forum is entitled to no weight, and the plaintiff bears the burden of establishing that transfer to the bargained-for forum is improper. *Id.* at 581-82. Second, the court may consider public-interest concerns, but not the parties' private concerns (meaning, their convenience). *Id.* at 582. Third, the transfer "will not carry with it the original venue's choice-of-law rules . . . ." *Id.* The result of this analytical framework is that "[i]n all but the most unusual cases," the parties will be held to their bargained-for forum selection clause. *Id.* at 583.

## DISCUSSION

Part I below resolves whether the parties' forum selection clause points to an Ohio or Maine venue. Part II applies *Atlantic Marine* to determine whether the parties' choice of venue should be overridden.

4

I.   **Interpreting the Distributor Agreement**

The Plaintiff contends that this litigation arises from the termination of the Distributor Agreement. First Am. Compl. ¶¶ 21, 23, 27, 32. The Distributor Agreement contains an "Applicable Law and Venue" section, which provides:

> This Agreement shall be construed, enforced and performed in accordance with the laws of the State of Ohio. Any litigation arising out of or in any way related to this Agreement shall [sic] venued only in Lorain County Common Pleas Court, or the United States District Court for the Northern District of Ohio. The parties hereby consent and submit to the jurisdiction of said courts.
>
> In the event that a law of the State in which the Distributor has its principal place of business or in a State of the Territory where Distributor is conducting business [Maine] is deemed to apply and said law conflicts with any provision of this Agreement, this Agreement shall be construed and enforced to be consistent with any such conflicting law, including its venue provisions.

Distributor Agreement ¶ 25. Thus, the threshold question is whether Maine has any law which applies to this dispute and conflicts with the parties' agreement.

The Plaintiff argues that the Maine Dealerships Act applies and conflicts with the Distributor Agreement. The Maine Dealerships Act includes the following provision:

> Jurisdiction. Concurrent jurisdiction under this chapter is in the District Court or Superior Court of the city or county where the dealer has its principal place of business. The court may grant equitable relief as is necessary to remedy the effects of conduct that it finds to exist and is prohibited under this chapter, including, but not limited to, declaratory judgment and injunctive relief.

10 M.R.S. § 1294(1). The Maine Dealerships Act further instructs:

> The provisions of this chapter are deemed to be incorporated in every agreement and supersede and control all other provisions of the agreement. A supplier may not require any dealer to waive compliance with any provision of this chapter. Any contract or agreement

5

purporting to do so is void and unenforceable to the extent of the waiver or variance. Nothing in this chapter may be construed to limit or prohibit good faith settlements of disputes voluntarily entered into between the parties.

10 M.R.S. § 1296. The Plaintiff asserts that "by conferring jurisdiction upon the Maine courts, the Act was also pre-determining that the venue for the litigation would be the State of Maine." Pl.'s Obj. to Def.'s Mot. to Transfer Venue 4 ("**Pl.'s Obj.**") (ECF No. 19). The Defendant resists by pointing out that "conferring jurisdiction" is different from "pre-determin[ing]" venue. Def.'s Reply Mem. in Supp. of its Mot. to Transfer Venue 2 (ECF No. 22).

The Defendant has the better argument. To ask whether a court has *jurisdiction* is to question whether the legislature has empowered that court to adjudicate the case. *See Brentwood at Hobart v. N.L.R.B.*, 675 F.3d 999, 1002 (6th Cir. 2012); 14D Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proced. § 3801 (4th ed. 2015). To ask whether *venue* is proper is to question where, geographically, among such empowered courts, the case should be heard. *Brentwood*, 675 F.3d at 1002; 14D Wright & Miller § 3801. Section 1294(1) of the Dealerships Act empowers both district and superior courts in Maine to hear cases under the Act and explains that such courts are empowered to grant equitable relief under the Act. This jurisdictional grant does not mandate that all actions under the Dealerships Act be litigated in Maine.[4]

---

[4] To the extent § 1294(1) states where, geographically, within Maine's district and superior courts disputes under the Dealerships Act should be heard, it may also be read as addressing venue. 10 M.R.S. § 1294(1) (emphasis added) ("Concurrent jurisdiction under this chapter is in the District Court or Superior Court of the city or county *where the dealer has its principal place of business*."). But later in the same section, the legislature used clear, mandatory venue language for arbitrations under the Act. 10 M.R.S. § 1294(3) ("[T]he place of any arbitration must be in the city or county in which the

6

The jurisdictional nature of § 1294(1) of the Dealerships Act becomes clearer when compared to mandatory venue provisions in other statutes. For example, Hawaii's Motor Vehicle Industry Licensing Act governs certain disputes among manufacturers, distributors, and dealers. *See* Haw. Rev. Stat. §§ 437-51-437-58. It provides that

> A manufacturer or distributor shall not: (1) Require any dealer in the State to enter into any agreement with the manufacturer or distributor or any other party that requires the law of another jurisdiction to apply to any dispute between the dealer and manufacturer or distributor, *or requires that the dealer bring an action against the manufacturer or distributor in a venue outside of Hawaii* . . . .

Haw. Rev. Stat. § 437-52 (emphasis added). Unlike the jurisdictional provision in the Maine Dealerships Act, this Hawaii statute clearly requires that disputes arising under it be heard in a Hawaii forum. In *Cycle-City, Ltd. v. Harley-Davidson Motor Co.*, 81 F. Supp. 3d 993 (D. Haw. 2014), a district court was called upon to interpret this Hawaii statute as against a forum selection clause choosing a Wisconsin venue, but also instructing that " '[a]ny applicable state motor vehicle statute governing the relationship between [the parties] shall be controlling in the event of a conflict between any provision of this Agreement and the state statute.' " *Cycle-City*, 81 F. Supp. 3d at 1001 (quoting the distributor agreement). Thus, similar to what I have

---

dealer maintains the dealer's principal place of business in the State."). Read in context, § 1294(1) confers jurisdiction, it does not restrict venue. *See King v. Burwell*, 135 S. Ct. 2480, 2489 (2015) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000)) ("[O]ftentimes the 'meaning—or ambiguity—of certain words or phrases may only become evident when placed in context.' So when deciding whether the language is plain, we must read the words 'in their context and with a view to their place in the overall statutory scheme.' "). The arbitration clause demonstrates that the Maine legislature knows how to, and in fact did, clearly mandate venue when that was its legislative choice. *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.").

7

been called on to do here, the Hawaii district court had to determine whether the Hawaii statute conflicted with the parties' contractual agreement on venue. The *Cycle-City* court determined that the Hawaii statute conflicted with setting venue in Wisconsin, and thus, by the parties' own agreement, Hawaii was the proper venue.

Unlike the strong venue provision in the Hawaii statute, the Maine Dealerships Act simply vests jurisdiction in Maine's trial courts and describes the scope of such courts' power to order relief. *See* 10 M.R.S. § 1294(1). It does not explicitly mention venue, or plainly require—as does the Hawaii statute—that all actions under it be brought in Maine.

I find that the parties' selection of an Ohio forum does not conflict with the Dealerships Act.[5] The next step is to apply *Atlantic Marine*'s § 1404(a) analysis to evaluate whether this case should be transferred to enforce the parties' agreement to litigate in Ohio.

## II. *Atlantic Marine* Transfer Analysis

Because the Distributor Agreement calls for an Ohio forum, I next must determine whether this is one of the "unusual cases" where the parties' choice should not be honored. *See Atl. Marine*, 134 S. Ct. at 582.[6] A case falls into that category only if the Plaintiff "show[s] that public-interest factors overwhelmingly disfavor a

---

[5] Because of this finding, I do not reach the Defendant's argument that the Dealerships Act does not apply to this dispute since the products in the parties' Distributor Agreement were not the type of "inventory" covered by the Act. Def.'s Reply Mem. in Supp. of its Mot. to Transfer Venue 2 & n.2 (ECF No. 22) (citing 10 M.R.S. § 1285(4)).

[6] With respect to threshold issues, Chadwick-BaRoss has not argued that the forum selection clause is permissive rather than mandatory or that this dispute falls outside its scope. *See Claudio-De Leon*, 775 F.3d at 46-47.

8

transfer." *Id.* at 583. Public interest factors "may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Id.* at 581 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).

Plaintiff argues that the Dealerships Act's anti-waiver section—10 M.R.S. § 1296—demonstrates that Maine's public policy is strong enough to defeat the forum-selection clause. Pl.'s Obj. 5. That section explains that the provisions of the Dealers Act are "deemed to be incorporated" into every agreement between a dealer and supplier, "control all other provisions of the agreement," and cannot be waived or varied. 10 M.R.S. § 1296. Section 1296 clearly states the mandatory nature of the Dealerships Act's requirements with respect to dealer/supplier relationships. But that section does not itself explain what public interest concerns would be compromised by litigating a suit under the Dealerships Act in Ohio.

Chadwick-BaRoss has not, for example, pointed to any unusual complications in the Dealerships Act that would require analysis by a court "'at home with the law.'" *Atl. Marine*, 134 S. Ct. at 581 n.6 (quoting *Piper Aircraft Co.*, 454 U.S. at 241 n.6). Nor does the Dealerships Act's jurisdiction provision—10 M.R.S. § 1294— evidence an overriding interest in having such disputes adjudicated solely in Maine. In fact, a district court in this circuit has found that a much stronger directive in a state statute failed to defeat a contrary forum selection clause. *See Caribbean Rests., LLC v. Burger King Corp.*, 23 F. Supp. 3d 70, 77-78 (D.P.R. 2014) (quoting P.R. Laws

9

Ann. tit. 10, § 278b-2) (honoring forum selection clause in Florida despite applicable state statute instructing that "[a]ny stipulation that obligates a dealer to . . . litigate . . . outside of Puerto Rico . . . shall be [ ] considered as violating [ ] public policy . . . and is therefore null and void."). In short, Chadwick-BaRoss has not met its high burden of establishing that public interest factors disfavor transfer.

The pre-*Atlantic Marine* federal cases the Plaintiff cites do not call for a different result.[7] *See* Pl.'s Obj. 5-6 (citing *Brio Corp. v. Meccano S.N.*, No. 06-C-1001, 2007 WL 2572307 (E.D. Wis. Sept. 5, 2007); *Brown Dog, Inc. v. Quizno's Franchise Co., LLC*, No. 04-C-18-C, 2007 WL 1114427 (W.D. Wis. May 13, 2004)). Those cases interpreted a dealership law that created a right for dealers to bring an action in their choice of venue[8] and included an anti-waiver provision.[9] *See Brio Corp.*, 2007 WL 2572307, at **1-3; *Brown Dog, Inc.*, 2007 WL 1114427, at **2-3. The combination of the "dealers' choice" and anti-waiver provisions demonstrated a public policy strong enough to defeat the forum selection clauses. *See Brio Corp.*, 2007 WL 2572307, at **1-3; *Brown Dog, Inc.*, 2007 WL 1114427, at **2-3. Here, the Dealerships Act does not contain a comparable "dealers' choice" provision. Further, a Wisconsin court has since clarified that it would be contrary to Supreme Court precedent to interpret *Brown Dog* to mean that the Wisconsin dealer statute could "completely nullif[y]

---

[7] The state court cases the Plaintiff cites from New Jersey and California are not relevant to this analysis because they do not interpret 28 U.S.C. § 1404(a).

[8] "If any grantor violates this chapter, a dealer may bring an action against such grantor in any court of competent jurisdiction . . . ." Wis. Stat. Ann § 135.06.

[9] "The effect of this chapter may not be varied by contract or agreement. Any contract or agreement purporting to do so is void and unenforceable to that extent only." Wis. Stat. Ann § 135.025(3).

forum selection clauses in franchise disputes." *Wins Equip., LLC v. Rayco Mfg., Inc.*, 668 F. Supp. 2d 1148, 1152 n.1 (W.D. Wis. 2009).

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the Defendant's motion to transfer venue (ECF No. 15). The Court **ORDERS** that this case be transferred to the United States District Court for the Northern District of Ohio, Eastern Division.

SO ORDERED.

/s/ Nancy Torresen
United States Chief District Judge

Dated this 1st day of October, 2015.